THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. FLORENCIO ARCHEVAL TORRUELLAS, known as "DON PRUDE," Defendant and Appellant.

No. 15298. Argued February 2, 1953.—Decided March 27, 1953.

*Héctor Lugo Bougal* for appellant. *Juan B. Fernández Badillo, Assistant Secretary of Justice,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

Florencio Archeval Torruellas, known as "Don Prude," was charged in the former District Court of Puerto Rico,

Ponce Section, with the crime of murder in the first degree consisting in that on April 2, 1950, he, unlawfully and with malice aforethought, making use of a pick, killed Antonio Rodríguez Rivera, a human being. The trial jury brought in a verdict of guilty of the offense charged, and on July 5, 1951, he was sentenced to life imprisonment. The defendant appealed from that judgment alleging that the court *a quo* committed two errors, to wit:

"1. That the lower court erred in permitting the district attorney to impeach the credibility of the defendant when the latter testified as a witness, by means of evidence of misdemeanors committed by the latter. .

"2. That the lower court erred in denying the motion for mistrial presented by the defense counselor, after the district attorney, in his argument on rebuttal to the jury, discussed a former case against the same defendant and in which the latter had been previously convicted."

■■ The first error is based on the fact that while the defendant was testifying as a witness in his behalf, the district attorney, on cross-examination, brought proofs, over the objection of the defense, of the defendant's former conviction of the crimes of murder in the second degree, housebreaking, aggravated assault and battery and carrying of weapons. At the close of the direct examination of the defendant, his attorney asked him, "Then, it isn't true that you went to provoke them?," and the defendant replied, "No, sir, nothing of what has been said here is true. I can prove it and the principal prosecutor knows that it's a lie. How can I say bad words? I'm not ill-bred. The first thing my father taught me was to respect other men and women. My seventy years of age prove it. I was born there, right there where the police headquarters is located, and when I was twelve years old I moved to Capitanejos, and, as I have said, I coldn't be a bully, because my body did not help me." The district attorney then proceeded to cross-examine him as follows:

District Attorney Cintrón:

"Don Prudencio, did you say that your father taught you to be respectful?

"Witness:

"Yes, sir, to be respectful.

"And did you always follow that teaching?

"I always followed that path.

"Did you say that you have already been in the penitentiary?

"And I can explain the situation.

"I don't want you to explain. For what crime, Don Prude?

"It was an illegal accusation.

"For what crime?

"Because they said that I had fired a shot, but it was a lie, because the four bullets were found on top of that, and a man who was a smuggler had the other one.

"How many years did you serve?

"Twenty years.

"For what crime?

"For murder, unfair.

"When did your father die?

"He died about thirty years ago.

"How old are you now?

"Seventy years old.

"On the basis of that advice from your father, do you respect your neighbor's house?

"Yes, sir, yes.

"In spite of that advice, didn't you go to jail for housebreaking? Was it in nineteen twenty-eight?

"That was another illegal accusation.

"Mr. Lugo (attorney):

"We object on the same ground as before.

"Judge:

"Question sustained. The defendant has said that he was taught to be moral and respectful and the district attorney is challenging that.

"Mr. Lugo:

"We object.

District Attorney Cintrón:

"Did you go to jail on September 10, 1928, for housebreaking? Do you recall that?

"Witness:

"I repeat once more that that was illegal.

"Do you remember?

"They sentenced me to three months.

On or about April, August 17, April 21, of '36, did you serve or were you confined for Aggravated Assault and Battery and Carrying Weapons?

"I don't deny it.

"Was it in nineteen thirty-six that you were accused of Murder in the First Degree?

"Yes.

"And did the jury reduce it later to Murder in the Second Degree?

"Yes, I have been convicted three times."

The general rule is to the effect that in criminal prosecutions the defendant may not be tried for any offense other than that charged in the information and that, therefore, evidence of other offenses committed by the defendant is inadmissible. *People* v. *Rodríguez*, 66 P.R.R. 302. By exception, evidence of other offenses is admissible when the former offense is a material fact to establish the commission of the crime charged, or when it is a part of the *res gestae* or when said evidence is presented to show motive, intent, premeditation, malice or a common plan, or when both offenses form part of the same transaction. *People* v. *Román*, 70 P.R.R. 48, *People* v. *Rodríguez, supra; People* v. *Pérez*, 47 P.R.R. 724.

None of the circumstances above mentioned were present here to admit that evidence. However, said evidence was certainly admissible for other reasons. Let us see why. Once the defendant takes the witness stand, he becomes a witness just like any other and is subject as any other witness to the same rules and procedures regulating the examination and cross-examination, *People* v. *Dumas*, 51 P.R.R. 819; *People* v. *Morales*, 42 P.R.R. 575; *People* v. *González*, 35 P.R.R. 617; *The People* v. *Román*, 18 P.R.R. 217 and pursuant to § 155 of the Law of Evidence (§ 517 of the Code

of Civil Procedure),[1] the district attorney could cross-examine the defendant as to any fact stated in the examination, or connected therewith. When the defendant testified on direct examination that he was not ill-bred, that the first thing his father taught him was to respect other men and women and that he could not be a bully, he opened the door for the district attorney to examine him as to all the facts connected with the defendant's testimony. Hence, there can be no legal objection, in a case like this, to the district attorney's taking to the consideration of the jury, through defendant's cross-examination, facts proving that his conduct in the past is contrary to and inconsistent with his previous testimony. To hold the contrary would be to permit a defendant to take the witness stand and to inform the jury of entirely false facts regarding his past life without the prosecution being able, on cross-examination, to prove such falsity. In *People* v. *Gallagher*, 35 Pac. 80 (Cal. 1893), it is stated that any cross-examination tending to elicit from the defendant statements to the effect that his previous conduct has been inconsistent with the statements given in his direct examination, thus discrediting his direct testimony, is within the realm of legitimate cross-examination. In *People* v. *Buckley*, 143 Cal. 375, 77 Pac. 169, it was stated: "If a defendant does not choose in his direct examination to enter upon matters relating to his previous history, the prosecution cannot commence any inquiry in regard thereto except as to the single case of a previous conviction of a felony; but, if he voluntarily opens the door to his past and testifies regarding the same for the purpose of showing his good character, he cannot complain of any cross-examination that is limited to the scope of his direct examination thereon." In *People* v. *Fon Ching*, 78 Cal. 169, 20 Pac. 396, the defendant was asked whether he had been arrested before. The court held that

---

[1] Said Section provides as follows:

"Section 155—The opposite party may cross-examine the witness as to any fact stated in his direct examination or connected therewith."

there was no error in permitting the question, and stated that: "The cross-examination of the defendant was certainly very broad, but, as he testified in chief about his birth, parentage, education, and business, we cannot say that he did not open the door wide enough to justify what followed in the cross-examination." See also *People* v. *Westek*, 190 P. 2d 9 (Cal.), which, as the instant case, involved a spontaneous declaration of the witness, not on examination by his counsel; *People* v. *Lombard*, 131 Cal. App. 525; 21 P. 2d 955 and § § 21 and 34 of our Law of Evidence (§ § 383 and 396 of the Code of Civil Procedure). In *People* v. *Dumas*, *supra*, the district attorney asked the defendant whether he had sharpened the knife [the same one that the defendant had admitted taking from a showcase], to which the latter replied, "I do not carry such a weapon." The district attorney then asked him whether he had been convicted of carrying a weapon and whether he had served a sentence. The lower court, over the objection of the defense, held that the question was pertinent, not to prove the bad reputation of the defendant, but to impeach his credibility. We decided on appeal that no error was committed, and said: "The district attorney was correct in impeaching the credibility ·of the accused in the manner he did. The defendant can not be compelled to testify; but when he exercises his right to take the witness stand, from that moment he is subject to all the rules of evidence the same as any other witness." In *People* v. *Pou*, 55 P.R.R. 297, the defendant had testified on direct examination that he had never been convicted. On cross-examination the district attorney asked him whether he remembered that on or about December 23, 1930, he had served 30 days in the district jail for aggravated assault and battery. We held that there was no error in permitting the district attorney to cross-examine the witness in regard to this matter which had been the object of the direct examination.

In the second assignment of error the district attorney is charged with misconduct which was prejudicial to the defendant. This assignment is based on the fact that in his argument on rebuttal to the jury the district attorney said that the defendant killed Rodríguez Rivera in the same manner he had previously killed Soldevila. However, as the stenographers of the court *a quo* did not transcribe the arguments of the parties to the jury, nor are they, therefore, before us, we are unable to know which was the argument developed by the district attorney when he made the remark in question. Although the judge who sat at the trial stated that the intention of the district attorney in making that remark was to stress the existence of the element of premeditation, such opinion of the judge is not conclusive, if sufficient ground underlies the argument of the district attorney, taken as a whole or at least as to the incident under discussion, to support the claim that such remark is not improper. For example, the district attorney could refer to the previous offenses committed by the defendant, if his purpose was to challenge his credibility as a witness. This is so because the fact of the former conviction of a felony was already before the jury and the district attorney could refer to such conviction for the purpose already noted. See, *People* v. *Brain*, 61 P. 2d 806; *Clark* v. *State*, 161 S. W. 2d 1072; *Newman* v. *State*, 187 S. W. 2d 559. Therefore, in the absence of a transcript of the entire incident we have no basis to hold that the second error was committed.

The errors assigned not having been committed, the judgment appealed from will be affirmed.